IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANK L. GRIMES, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No.  04-1492 |
| | ) |
| DOLLAR GENERAL CORPORATION, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

# OPINION
## and
# ORDER OF COURT

### SYNOPSIS

Pending before the Court is Defendant's, Dollar General Corporation's, Motion for Summary Judgment as to Plaintiff's Amended Complaint.  (Docket No. 23).  After careful consideration of the submissions filed by both parties, Defendant's Motion for Summary Judgment (Docket No. 23) is granted in part and denied in part as set forth more fully below.

### I. BACKGROUND[1]

Plaintiff began his employment with Defendant on or about May 7, 2003, as a Store Manager.  On June 24, 2004, Plaintiff closed the store twenty-nine (29) minutes early, because, as Plaintiff states, "he was working alone and feeling ill."

---

[1]Unless otherwise noted, the facts are undisputed.

*See,* Docket No. 33, ¶4.  Defendant's policy under "Reasons for Counseling and/or Termination" provides that closing a store early may lead to progressive counseling and/or termination. District Manager, Mary Cromer, viewed a digital video recording ("DVR") on June 26, 2004, to determine if Plaintiff closed the store early on June 24, 2004.  On June 28, 2004, Mary Cromer contacted Roger Prewett, Employee Relations Coach, to inform him of the incident and discuss disciplinary actions. *See,* Docket No. 31, ¶3.  On July 2, 2004, Michael Hegerich, Asset Protection Manager, also reviewed the DVR. On July 6, 2004, Hegerich submitted a written statement to Roger Prewett, confirming Cromer's observations.  On that same day, Prewett sent an e-mail to Cromer, requesting that she submit her written statement.  Cromer then submitted her written statement on Friday, July 9, 2004, detailing her observations of the DVR.  On Monday, July 12, 2004, Prewett agreed with Cromer's recommendation to terminate Plaintiff's employment.

On Friday, July 9, 2004, Plaintiff again closed the store early.  On this occasion, Plaintiff's wife left a message for Cromer informing her that Plaintiff had closed the store early and had been admitted to the hospital.  While in the hospital on July 9, 2004, Plaintiff was diagnosed for the first time with atrial fibrillation.  On July 10, 2004, Plaintiff was released from the hospital.  On July 11, 2004, Plaintiff contacted the Employee Response Center and informed Defendant that he had closed the store early and had been admitted to the hospital.

According to Plaintiff, the first time that he sought FMLA leave was when his wife called Cromer on July 9, 2004, and left a message that he was admitted to the

2

hospital. On July 14, 2004, Plaintiff applied for FMLA leave. Plaintiff was informed of his eligibility to take FMLA leave on July 15, 2004. Defendant placed Plaintiff on medical leave.

On or about July 19, 2004, Plaintiff received a release to return to work full duty. Defendant received this release document on July 21, 2004. Cromer called Plaintiff on July 23, 2004, and informed him of his termination. In this telephone conversation, Cromer informed Plaintiff that he was terminated because he closed the store early without approval on June 24, 2004.

On September 29, 2004, Plaintiff filed the instant action with this Court. On April 20, 2005, Plaintiff filed an Amended Complaint asserting substantive and retaliation violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601, *et seq.,* a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq.*, and an intentional infliction of emotional distress claim . *See,* Docket No. 12. Defendant has filed a Motion for Summary Judgment as to all claims. *See,* Docket No. 23. Plaintiff filed a Brief in Opposition. *See,* Docket No. 34. After leave was granted, Defendant filed a Reply Brief. *See,* Docket No. 38. The Motion is now ripe for review.

## II. **LEGAL ANALYSIS**

### A. **STANDARD OF REVIEW**

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material facts and that the moving party is

entitled to judgment as a matter of law. Fed R. Civ. P. 56(c). A fact is material when it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Rule 56 mandates the entry of judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the Court must examine the facts in the light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex*, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988), *quoting Celotex,* 477 U.S. at 322.

### B. FMLA - COUNT I

Count I of Plaintiff's Amended Complaint is a substantive claim for a violation of Plaintiff's rights under the FMLA, as well as a claim for retaliation under the FMLA. *See,* Amended Complaint, ¶¶16-20.  In 1993, Congress enacted the FMLA "to balance the demands of the workplace with the needs of families,...[and] to entitle [eligible] employees to take reasonable leave for [certain] medical reasons." 29 U.S.C. §2601. For example, the FMLA provides, *inter alia,* that "an eligible employee shall be entitled to a total of 12 work weeks of leave during any 12 month period...(D) [b]ecause of a serious health condition...." 29 U.S.C. §2612(a)(1)(D).  A "serious health condition" is defined as an "illness, injury, impairment, or physical or mental condition" that involves: either (1) inpatient care; or (2) continuing treatment by a healthcare provider.  29 C.F.R. §825.114(a).

When leave is required for the serious health condition of the employee, the employee may take intermittent or reduced leave. 29 U.S.C. § 2612(b).  After a period of qualified leave, an employee is entitled to reinstatement to the former position or an equivalent one with the same benefits and terms. 29 U.S.C. §2614(a).  The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" in the FMLA. 29 U.S.C. § 2615(a)(1).  The FMLA similarly declares it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice

made unlawful" under the FMLA. 29 U.S.C. § 2615(a)(2). Thus, an employer who interferes with an employee's exercise of rights, or retaliates for the exercise of the same, is in violation of the FMLA and the employee may bring a civil action against the employer for said violations. 29 U.S.C. §§2615(a), 2617(a). Plaintiff asserts that Defendant violated both sections of the FMLA. *See,* Amended Complaint, ¶¶16-20.

### 1. **Violation of Plaintiff's Substantive FMLA Rights**

Plaintiff's Amended Complaint alleges that Defendant improperly interfered with his substantive rights under the FMLA. 29 U.S.C. §2615(a)(1). Specifically, §2615(a)(1) provides:

> It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

Defendant asserts that in substantive FMLA claims, the analysis proceeds under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 972 (1973). *See,* Brief in Support, pp. 11-12. Plaintiff disagrees and argues that for a substantive FMLA claim he need only show that he was entitled to benefits under the FMLA and that he was denied them. *See,* Brief in Opposition, p. 7. I agree with Plaintiff.[2] *See*, *Callison v. City of Philadelphia*, 128 Fed.Appx. 897, 899 (3d Cir. 2005) ("Under this theory, the employee need not show that he was treated differently than others."); *see also,* 29 U.S.C. §§ 2612(a), 2614(a); 29 C.F.R. §825.216(a). Thus, to state a *prima facie* substantive violation under the FMLA, a plaintiff must

---

[2] I note, for completeness, that if a plaintiff meets this burden, then the burden would shift to Defendant to show that he would have been denied reinstatement even if he had not taken FMLA leave. *See, Parker v. Hahnemann Univ. Hosp.,* 234 F. Supp.2d 478, 487 (D. N.J. 2002).

6

demonstrate that he was entitled to a benefit under the FMLA, and that he was denied that entitlement. *Callison, supra; Bearley v. Friendly Ice Cream Corp.,* 322 F. Supp. 2d 563, 571 (M.D. Pa. 2004).[3]

Consequently, I find that Defendant applied the incorrect analysis as to Plaintiff's substantive FMLA claim. It follows, therefore, that Defendant's arguments, that Plaintiff's substantive claim must be dismissed because "Plaintiff cannot establish the third element[4] under" the incorrect analysis, lacks merit. As a result, summary judgment as to Plaintiff's substantive FMLA claim is not warranted.

### 2. Retaliation in Violation of FMLA

Count I of Plaintiff's Amended Complaint also alleges that Defendant fired him in retaliation for exercising his rights in taking medical leave in violation of 29 U.S.C. §2615(a)(2). *See,* Amended Complaint, ¶19. Specifically, §2615(a)(2) provides:

> It shall be unlawful for any employer to discharge or in

---

[3] Plaintiff asserts that the substantive FMLA right interfered with was Plaintiff's right to reinstatement. *See,* Brief in Opposition, p. 34. However, the right to reinstatement is not absolute. Section 825.216 of the regulations provides, in pertinent part, as follows:

§ 825.216 Are there any limitations on an employer's obligation to reinstate an employee?

(a) An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.

29 C.F.R. §825.216(a). *See also,* 29 U.S.C. §2614(a)(3) ("(a) Restoration to position…(3) Limitations – Nothing in this section shall be construed to entitle any restored employee to–…(B) any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.")

[4] The third element as proffered by Defendant is that Plaintiff must prove "either that he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he took FMLA leave (causal connection)." *See,* Brief in Support, pp. 12-15.

>any other manner discriminate against any individual for
>opposing any practice made unlawful by this subchapter.

In analyzing claims made for retaliation under the FMLA, courts look to the legal framework established for Title VII claims. *Leung v. SHK Management, Inc.,* 1999 WL 1240961, *13, No. CIV. A. 98-3337 (E.D. Pa. Dec. 21, 1999). Thus, a plaintiff may prove FMLA retaliation by direct evidence as set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-46 (1989) or indirectly through the burden shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Id.* at *13; *Baltuskonis v. U.S. Airways, Inc.,* 60 F.Supp.2d 445, 558 (E.D. Pa. 1999), *citing Churchill v. Star Enterprises,* 183 F.3d 184 (3d Cir. 1999). Both parties agree that this claim should proceed under a burden shifting analysis. *See,* Brief in Support, pp. 11-17; *see also,* Brief in Opposition, pp. 4-6.

Under a burden shifting analysis, to prove a *prima facie* case for retaliation, a plaintiff must demonstrate that: (1) he is protected under the FMLA; (2) he suffered an adverse employment action; and (3) that a causal connection exists between the adverse employment action and the plaintiff's exercise of his rights under the FMLA.[5] *See, Conoshenti v. Public Service Elec. & Gas Co.,* 364 F.3d 135 (3d Cir.2004); *Baltuskonis,* 60 F.Supp.2d at 448. In this case, Defendant does not dispute that Plaintiff can satisfy the first two elements of a *prima facie* case. *See,* Brief in

---

[5]Defendant adds to the third element of a *prima facie* case, causal connection, that Plaintiff can either establish a causal connection or that he was treated less favorably than an employee who had not requested leave under the FMLA. *See,* Brief in Support, pp. 12, 15. The Third Circuit, however, has not held that the "treated less favorably" analysis may be substituted for the causal connection analysis. *See, Conoshenti v. Public Service Elec. & Gas Co.,* 364 F.3d 135 (3d Cir. 2004). To the contrary, to establish a *prima facie* case of FMLA retaliation, a plaintiff must show that there was a causal connection. *Id.* Consequently, I need not address any argument regarding the "treated less favorably" analysis.

Support, p. 12. Rather, Defendant argues that Plaintiff cannot establish the third element. *Id.*

Specifically, Defendant argues that Plaintiff cannot establish a causal connection "[b]ecause the termination decision had been made prior to his assertion of FMLA rights...." *See,* Brief in Support, p. 14. Plaintiff argues that the first time that he was seeking FMLA leave was on July 9, 2004, when his wife called Cromer to tell her that he had been admitted to the hospital. *See,* Docket No. 33, ¶33. Viewing all the evidence in the light most favorable to Plaintiff, I find that the proximity in time between Plaintiff's FMLA request, Plaintiff's FMLA leave and his termination is sufficient to establish the necessary causal connection for purposes of his *prima facie* case. *See, Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 279-81 (3d Cir. 2000); *Baltuskonis,* 60 F.Supp.2d at 448.

Since I find that Plaintiff has satisfied his initial burden, the burden shifts to Defendant. Defendant must proffer a legitimate, nondiscriminatory reason for firing Plaintiff. *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir. 1997); *Bearley,* 322 F.Supp.2d at 571; *Baltuskonis v. US Airways, Inc.*, 60 F.Supp.2d at 448-49. "The employer's burden at this stage is 'relatively light: it is satisfied if the defendant articulates any legitimate reason for the adverse employment action; the defendant need not prove that the articulated reason actually motivated the action.'" *Krouse,* 126 F.3d at 500-01, *quoting, Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 (3d Cir.1997). Defendant submits that it fired Plaintiff for violating store policy by closing the store early without permission. *See,* Docket No. 26, ¶3; *see also,* Brief in

9

Support, p. 15. I find this is a legitimate reason for termination.

As a result, the burden then shifts back to Plaintiff. To succeed on this element of the burden shifting test, a plaintiff must now point to evidence from which a reasonable fact finder could conclude either: (1) that the employer's articulated legitimate reasons are unworthy of belief (i.e. pretextual), or (2) that unlawful discrimination "was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes,* 32 F.3d 759, 764 (3d Cir. 1994); *Sheridan v. E.I. Dupont de Nemours and Co.,* 100 F.3d 1061 (3d Cir. 1996), *cert. denied,* 521 U.S. 1129 (1997). Defendant only focuses on pretext. To prove a pretext:

> [T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incohererencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them "unworthy of credence"...and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons"....

*Fuentes,* 32 F.3d at 765 (citations omitted).

In this case, Plaintiff's only statement as to Defendant's pretext argument is that it is "disingenuous because Cromer never even informed Grimes that he was under investigation from the June 24th incident or given an opportunity to respond despite company policy." *See,* Docket No. 34, p. 6. After a review of the record, I disagree with Plaintiff that it was company policy to give an employee an opportunity to respond before termination in every instance. *See,* Docket No. 31, pp. 68-69, 72-73. Furthermore, I do not find that the fact that Plaintiff was not informed that he was under investigation from the June 24th incident to discredit

Defendant's reason for firing Plaintiff. There was no policy that Plaintiff be informed of such. Furthermore, Plaintiff was aware that it was company policy that closing a store early without permission is a terminable offense. Docket No. 31, p. 156. Nevertheless, based on the time delay by Ms. Cromer in submitting her statement, the timing of when Ms. Cromer finally submitted her recommendation of termination (July 9) and Plaintiff's request for FMLA leave (July 9), I do find weaknesses in Defendant's argument such that a genuine issue of material fact exists as to pretext. Consequently, Defendant's Motion for Summary Judgment as to Plaintiff's FMLA retaliation claim in Count I is denied.

### B. <u>ADA - COUNT II</u>

Count II of Plaintiff's Amended Complaint asserts a cause of action for violation of the ADA. *See,* Amended Complaint, pp. 21-28. "Congress enacted the ADA in 1990 as an effort to prevent otherwise qualified individuals from being discriminated against in employment based on a disability." *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 579 (3d Cir. 1998); *see*, 29 C.F.R. §1630, *et seq.* Pursuant to the ADA, an employer is prohibited from discriminating "against a qualified individual with a disability because of the disability of such individual with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C § 12112(a). Discrimination encompasses not only "adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities."

*Taylor v. Phoenixville School District*, 184 F.3d 296, 306 (3d Cir. 1999). The ADA states that an employer discriminates against an employee when he "does not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship...." 42 U.S.C. § 12112(b)(5)(A).

In light of the standards imposed by the ADA, it is well-settled that for a plaintiff to establish a *prima facie* case of discrimination under the ADA, he must show:

> 1. He is a disabled person within the meaning of the ADA;
>
> 2. He is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and
>
> 3. He has suffered an otherwise adverse employment decision as a result of discrimination.

*Gaul,* 134 F.3d at 580, *citing Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996); *Deane v. Pocono Medical Center*, 142 F.3d 138, 142 (3d Cir. 1998). The failure to establish even one of these elements is grounds for summary judgment. *See, Gaul*, 134 F.3d at 580. Defendant asserts that Plaintiff cannot meet the burden of proving the first two elements.

1. **Disabled within the meaning of the ADA**

The first element the Plaintiff must prove is that he is disabled within the meaning of the ADA. A person is disabled within the meaning of the ADA if he:

> (A) has a physical or mental impairment that substantially

12

>    limits one or more of the major life activities of such individual;
>
>    (B)  has a record of such an impairment; or
>
>    (C)  is regarded as having such an impairment.

*See*, 42 U.S.C. §12102(2). Defendant suggests that Plaintiff cannot meet any of the definitions of disabled. *See,* Defendant's Brief in Support, pp. 4-10. In response, Plaintiff appears only to be arguing that he meets the "regarded as" definition of disabled. *See,* Plaintiff's Brief in Opposition, pp. 11-12. Consequently, if Plaintiff fails to meet the "regarded as" definition of disabled, Plaintiff is not covered by the ADA and summary judgment will be appropriate. *Id.* On the other hand, if there is a genuine issue as to whether Plaintiff meets the "regarded as" definition of disabled, then I proceed to discuss the next element of the *prima facie* case.

a. "Regarded as" a disabled person

The third definition of disabled provides that an individual will be considered disabled within the meaning of the ADA if he is "regarded as" having a disability by his employer. *See*, 42 U.S.C. §12102(2)(C). There are two (2) ways in which an employee may fall within this definition:

>    1.  Despite having no impairment at all, the employer erroneously believes that the plaintiff has an impairment that substantially limits a major life activity; or
>
>    2.  The plaintiff has a nonlimiting impairment that the employer mistakenly believes substantially limits a major life activity.

*Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489 (1999). The parties agree that Plaintiff was diagnosed with an atrial fibrillation on July 9, 2004. Thus, Plaintiff fits

13

into the second category of the "regarded as" definition. In other words, Plaintiff claims that he was disabled because Defendant mistakenly regarded his atrial fibrillation as substantially limiting his ability to breathe.[6] *See,* Brief in Opposition, pp. 11-12.

Plaintiff's only argument in this regard is that Cromer knew that Plaintiff had closed the stores early on three occasions in January, June and July of 2004, because he was not feeling well. *See,* Brief in Opposition, pp. 11-12. To begin with, Plaintiff admits that he was not diagnosed with atrial fibrillation until July 9, 2004. *See,* Docket No. 33, ¶34. Furthermore, "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate...that the employer regarded the employee as disabled...." *Kelly v. Drexel University,* 94 F.3dd 102, 109 (3d Cir. 1996); *Sutton,* 527 U.S. at 489. There is simply no evidence that Defendant regarded Plaintiff as being disabled in the major life activity of breathing. Thus, viewing the evidence in the light most favorable to Plaintiff, I find that there is no evidence that Defendant mistakenly regarded Plaintiff as being substantially limited in his ability to breathe.

Accordingly, I find that there is no genuine issue of material fact that Plaintiff was not disabled under the meaning of the ADA. Thus, Plaintiff has failed to establish

---

[6] I note that Plaintiff's Amended Complaint also alleges that he was regarded as substantially limited in the major life activity of working. *See,* Amended Complaint, ¶24. Plaintiff, however, has failed to provide any argument, let alone evidence, on this point. The failure of Plaintiff to raise a genuine issue of fact as to whether Defendant evidenced a belief that Plaintiff was unable to work in a broad range of jobs is fatal to his case. *See, Tice v. Centre Area Trans. Auth.,* 247 F.3d 506, 516 (3d Cir. 2001). Consequently, viewing the evidence in the light most favorable to Plaintiff, summary judgment regarding the major life activity of working is warranted.

the first element of a *prima facie* case of discrimination under the ADA. Since Plaintiff is not able to set forth a *prima facie* case of discrimination under the ADA, Defendant is entitled to a judgment as a matter of law. Therefore, summary judgment in favor of the Defendant as to Count II of Plaintiff's Amended Complaint is appropriate.[7]

**C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - COUNT III**

Count III of Plaintiff's Amended Complaint is a claim for intentional infliction of emotional distress ("IIED"). *See,* Amended Complaint, ¶¶29-33. Defendant argues that Plaintiff's claim for IIED is barred by the Pennsylvania Workers' Compensation Act ("WCA"), 77 P.S. §481. *See,* Brief in Support, p. 19-20. Plaintiff fails to address this argument in his supporting brief. *See,* Brief in Support, pp. 9-10. The WCA is the exclusive remedy for employees who are injured in the course of their employment. 77 P.S. §481.[8] The Pennsylvania Supreme Court has held that this includes intentional acts. *See, Poyser v. Newman & Co.*, 514 Pa. 32, 522 A.2d 548, 551 (1987); *Danese v. Morrison-Knudsen/Slattery*, 784 F.Supp. 228, 229 (E.D. Pa. 1992). Since Plaintiff alleges

---

[7]Because I have found that Plaintiff has failed to meet the definition of disabled under the ADA, I need not discuss whether or not he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations.

[8]Section 481 provides, in pertinent part, as follows:

**§ 481. Exclusiveness of remedy; actions by and against third party; contract indemnifying third party**

(a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

77 P.S. §481(a) (footnotes omitted).

that the actions taken by his employer caused his emotional injury, I find that it is barred by the exclusivity provision of the Pennsylvania WCA. 77 P.S. §481. Thus, summary judgment is warranted. Consequently, Defendant's Motion for Summary Judgment as to Count III of Plaintiff's Amended Complaint is granted.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANK L. GRIMES, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 04-1492 |
| | ) |
| DOLLAR GENERAL CORPORATION, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## ORDER OF COURT

AND NOW, this **1st** day of March, 2006, after careful consideration of Defendant's Motion for Summary Judgment (Docket No. 23), it is ORDERED that said Motion is granted in part and denied in part, as follows:

> 1. Defendant's Motion for Summary Judgment as to Count I (FMLA, substantive and retaliation) of Plaintiff's Amended Complaint is denied;
>
> 2. Defendant's Motion for Summary Judgment as to Count II (ADA) of Plaintiff's Amended Complaint is granted; and
>
> 3. Defendant's Motion for Summary Judgment as to Count III (IIED) of Plaintiff's Amended Complaint is granted.

A settlement conference for the above case had been set for Monday, March 20, 2006, at 11:00 A.M., on the Third Floor, Suite 3280 of the U.S. Post Office and Courthouse before the undersigned. Counsel shall have settlement authority and

parties shall be either present or available by telephone.  The parties are specifically directed to consult this Court's Chambers' Rules regarding position letters. *See*, Chambers' Rules §III.A.2.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge